File Name: 07a0304n.06

Filed: May 2, 2007

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Nos. 05-6337, 05-6488

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

MACK D. BUTTS,

    Plaintiff-Appellee Cross-Appellant,

v.

GLENN L. McCULLOUGH, JR. et al.,

    Defendants,

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS,

    Defendant-Appellant Cross-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

_____/

Before:    MARTIN, BATCHELDER, and McKEAGUE, Circuit Judges.

    BOYCE F. MARTIN, JR., Circuit Judge. Plaintiff Mack Butts filed suit against three members of the Tennessee Valley Authority Board of Directors, the International Association of Machinists and Aerospace Workers ("IAM"), IAM District Lodge 711, and IAM Local Lodge 2356, alleging violations of the Age Discrimination in Employment Act and the Tennessee Human Rights Act. The district court granted summary judgment with respect to Butts's claims of age discrimination, and dismissed the TVA defendants from the suit altogether, but denied summary judgment against IAM and Local 2356 with regard to Butts's claim of retaliation. The case was tried

to a jury, which returned a verdict for Butts on the retaliation claim, and awarded him damages of over $500,000. IAM now appeals the judgment against it, and Butts cross appeals the dismissal of his age discrimination claim at summary judgment. For the following reasons, we reverse the district court's denial of IAM's motion for judgment as a matter of law.

I.

Mack Butts worked as a machinist for the Trane Company in Clarksville, Tennessee from 1968 to 1998, during which time he was a member of IAM Local Lodge 1296.[1] Upon retiring, Butts transferred his union membership to Local 2356, and contacted the IAM office in Chattanooga to ask to be referred for part-time work at the Tennessee Valley Authority's Cumberland Fossil Fuel Plant in Cumberland City. IAM initially referred Butts for such positions, and he worked for TVA subcontractors at the plant on several occasions. In the fall of 1999, Butts became aware of an opening for a full-time machinist. Through its agreement with IAM and other unions, TVA considers referrals from the unions prior to contacting other outside candidates for the full-time positions. Although TVA normally hires from the IAM list, it has no obligation to do so, and can decide to seek applicants from other sources.

Butts sought and received a referral for the full-time machinist position from IAM in January of 2000.[2] He was interviewed by TVA, but jobs were offered to four individuals other than Butts, one of whom, Robert Ross, was the same age as Butts. Ross declined the job offer, as he already had

---

[1] IAM is an international union with affiliated district and local lodges in the United States and Canada. Each lodge is an autonomous, self-governing entity.

[2] Apparently IAM had also referred Butts for a different full-time position in 1999, but Butts had not been aware of the referral until it came up in this litigation.

a position at another TVA plant. When he did so, TVA requested another panel of applicants rather than offering Butts the job. In April, Butts inquired about the hiring decision with Ed Vaughn, TVA's Director of Human Resources at the Cumberland City plant, and Vaughn informed Butts that he had not been hired. Butts asked Vaughn why he had not been hired when he believed he was the most qualified candidate, and contended that it was on account of his age. At this point Vaughn referred him to one of the plant's EEO counselors, Raul Hernandez. Butts contacted Hernandez the following day, and told him that he thought he had been discriminated against on the basis of his age. Hernandez told Butts that he would look into the hiring decision, and over the next two months the two discussed the issue on a regular basis. During this time, Hernandez made a number of inquiries about the hiring decision. The culmination of Butts's consultation with Hernandez occurred on June 5, when Butts told Hernandez over the telephone that he was in the process of filling out his EEOC complaint. Hernandez replied that he "would not do that just yet," because he had spoken to Mike Burke, the TVA maintenance manager at the Cumberland plant, and "Mike has everything but promised us a job; it just wouldn't be to your best interest to fill it out at this time. It would be like rubbing it in their face. But if you want to, I will fill it out for you." Joint App'x at 274 (Butts depo.).

Word of Butts's intention to file an EEO complaint based on age discrimination spread after his conversations with Hernandez. In investigating Butts's claim, Hernandez spoke with Don Burdette, the Union Steward for Local 2356, and communicated to Burdette that Butts intended to file a complaint. Burdette in turn passed this information on to W. Edward Pierce, an IAM union representative. Pierce had also heard of the possibility of a complaint through "scuttlebutt" among

TVA personnel and union members. Pierce had the authority to decide which IAM members would be referred for full-time positions with the TVA.

In the fall of 2000, Butts again became aware of a posting for another full-time machinist position at the Cumberland City plant. He discussed the opening with Burdette, who encouraged him to apply for the position. Butts filled out an application and brought it to Vaughn, and subsequently, at Vaughn's instruction, went to speak with Burdette to ensure that he had a referral from the union. Burdette assured him that there should be no problem with him getting the referral. Burdette included Butts on a list of 15 members for the referral, and forwarded the list to IAM's hiring hall in Chattanooga. Burdette later discovered from Vaughn, however, that IAM had not referred Butts. Burdette was surprised, and called IAM to follow up. He spoke to Linda Tickle, a secretary, who spoke with someone in the background, and relayed to Burdette that IAM had a policy against referring retirees. On March 5, 2001, Burdette informed Butts that he was not going to have an opportunity for the job because the Union had not referred him for it. Burdette told Butts that the Union had a policy against referring retirees. Butts was perplexed by this policy, as he had never heard of it in his 30 years as an IAM member, it obviously had not prevented him from being included on the prior referral list, and because of Burdette's earlier assurance that Butts would indeed be referred. As a result, he subsequently filed this lawsuit.

Tickle was deposed and testified at trial, and gave contradictory explanations of how the referral list was composed. First, in her January 22, 2003 deposition, Tickle testified that she used a computer program to compile the referral list. On another occasion, she testified that Burdette had not provided her with Butts's name for the referral list. Eventually, however, Tickle confirmed that

Butts had originally been referred, but that she had noted "Ret." next to his name to denote that he was retired, which resulted in him not being referred to TVA. Tickle ultimately testified at trial that she discussed the referral list with Pierce, and he instructed her to only include names from the active list.

## II.

Butts filed suit in February 2002 against three members of the TVA Board of Directors, IAM, IAM District Lodge 711, and IAM Local Lodge 2356. The complaint alleged violations of the ADEA and THRA against the TVA defendants for their failure to hire him for the positions posted in 2000 and 2001, and that the second failure to hire him violated the ADEA's anti-retaliation provision. It alleged similar violations by the union defendants based on the allegedly discriminatory referral preference for non-pensioners, and for the retaliatory failure to refer Butts for the second position.

All defendants moved for summary judgment. The district court granted the motion in full on behalf of the TVA defendants, reasoning that although Butts made out a prima facie case under the ADEA, the TVA defendants offered several legitimate, nondiscriminatory bases for not hiring him pursuant to the 2000 referral from IAM, including a preference for hiring TVA veterans and a scoring system under which Butts scored lower than other candidates. With regard to the second job posting, the district court determined that IAM's failure to refer Butts was a legitimate reason for the TVA not to hire him, pursuant to its normal practice. Butts offered no evidence to demonstrate that either of the TVA's explanations were pretextual. The district court also dismissed Butts's

retaliation claims against the TVA for similar reasons. The claims against the TVA were thus dismissed in their entirety, and are not directly at issue in this appeal.

With regard to the union defendants, the district court granted summary judgment on Butts's age discrimination claim. In describing the underlying age discrimination claim based on the union's policy of granting a referral preference to non-pensioners, the subject of Butts's cross-appeal here, the district court stated that "Plaintiff does not clearly state whether he is relying solely on a disparate treatment analysis, or whether he wishes to argue disparate impact as well." D. Ct. Op., Sept. 25, 2003, at 32. The district court determined that a disparate impact theory of recovery was unavailable to Butts at any rate, as he had failed to submit statistical evidence that would be sufficient to show that his exclusion was due to his membership in a protected group. It also dismissed his disparate treatment claim, reasoning that the union's consideration of pension status did not establish a discriminatory motive, even though it strongly correlated with age, and that Butts had offered no reason to view the policy as pretextual.

The district court denied summary judgment, however, on Butts's retaliation claim against the union defendants. First, the district court concluded that Butts could establish a prima facie case of retaliation. It rejected the union defendants' arguments that the failure to refer him was not an adverse job action. It also rejected the argument that Butts could not show a causal connection between his complaints of discrimination and their exclusion of Butts on the second referral list, based on the temporal proximity of the two events and the fact that Butts had been referred for a number of positions before the complaint. Next, the district court accepted that the policy of granting a referral preference to non-pensioners was a legitimate, non-discriminatory reason for the

decision not to refer Butts for the 2001 position. Yet the district court also determined that Butts had produced sufficient evidence that the decision was pretextual to survive summary judgment. This conclusion was based on Burdette's confusion over the policy's existence, Tickle's deposition testimony that retirement status was not considered in the creation of the referral list, and Butts's inclusion on the first referral list and exclusion from the second list, given that his allegations of age discrimination were made between the two referrals. The district court rejected the union's argument that it would have no reason to retaliate against Butts for his allegations of discrimination against TVA, particularly in light of its adversarial relationship with TVA, and ruled that this was a question for the jury. The district court further ruled that the retaliation claim could proceed against Local 2356 as well as IAM, in light of the local's participation in the referral process, but granted summary judgment in favor of District Lodge 711, as Butts had failed to allege that it was involved in the referral process.

The case proceeded to trial on Butts's retaliation claim against IAM and Local 2356. The jury found for Local 2356 but against IAM, and awarded Butts backpay from IAM in the amount of $200,844, liquidated damages in the same amount, and frontpay in the amount of $144,878, for a total of $546,566. IAM filed a renewed motion for judgment as a matter of law — it had initially sought judgment as a matter of law at the close of Butts's case — or, in the alternative, for a new trial or for remittitur. The district court denied all three motions, reasoning that evidence at trial supported the verdict and the damages award. D. Ct. Op., July 29, 2005. IAM now appeals from those rulings.

III.

This Court reviews a district court's decision regarding a motion for judgment as a matter of law de novo. *Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005). "Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." *Id*. The *Barnes* court further framed the review of a post-trial motion for judgment as a matter of law as follows:

> When reviewing the facts of a discrimination claim after there has been a full trial on the merits, we must focus on the ultimate question of discrimination rather than on whether a plaintiff made out a prima facie case. Thus, the proper inquiry following the presentation of all evidence in a Title VII case is whether plaintiff has proven its case by a preponderance [of the evidence.] Nonetheless, the evidentiary underpinnings of a plaintiff's prima facie case are not irrelevant or insulated from our examination to aid our determination whether the evidence is sufficient to support a finding of intentional discrimination.

*Id*.

The district court found, and the parties now agree, that the anti-retaliation provisions of the Tennessee Human Rights Act and the ADEA are nearly identical. Thus, although the case was presented to the jury under both causes of action, the ADEA analysis subsumes the state law analysis. The ADEA's anti-retaliation provision provides:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, . . . or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has **opposed any practice** made unlawful by this section, **or** because such individual, member or applicant for membership has **made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation** under this Act.

29 U.S.C. § 623(d) (emphasis added). There are thus two types of conduct against which an employer cannot retaliate — employee **opposition** to age discrimination, and employee **participation** in an investigation of age discrimination. In the Title VII context, we have given examples of conduct protected by the opposition clause, including "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer — e.g., former employers, union, and co-workers."[3] *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). Further, the opposition must be based on "a reasonable and good faith belief that the opposed practices were unlawful. In other words, a violation of Title VII's retaliation provision can be found whether or not the challenged practice ultimately is found to be unlawful." *Id*. at 579-80. With respect to the participation clause, this Court has stated that

> [t]he "exceptionally broad protections" of the participation clause extend[] to persons who have "participated in any manner" in Title VII proceedings. Protection is not lost if the employee is wrong on the merits of the charge, nor is protection lost if the contents of the charge are malicious or defamatory as well as wrong. Thus, once activity in question is found to be within the scope of the participation clause, the employee is generally protected from retaliation.

*Id*. at 582.

---

[3]The parties agree that Title VII's retaliation provision is similar in pertinent respects to that of the ADEA, and that cases interpreting Title VII are thus an appropriate source of authority for interpreting the ADEA's anti-retaliation clause. *See, e.g., Wathen v. GE*, 115 F.3d 400, 404 n. 6 (6th Cir. 1997) (stating that the supervisor liability sections of the ADEA and Title VII can be interpreted interchangeably).

In order to make out a prima facie case of retaliation under either clause, a plaintiff must show that 1) he engaged in legally protected activity, 2) the defendant knew of the activity, 3) he suffered an adverse employment action after defendant's discovery of the activity, and 4) there was a causal connection between the activity and the adverse employment action. *Id*. at 578. Where a plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. If this burden is met, the plaintiff carries the final burden of demonstrating that the proffered justification was pretextual, or was not the true reason for the adverse employment action. *Id*.

IAM argues on appeal that Butts did not have a reasonable ground to believe he had been the subject of age discrimination, rendering relief unavailable under either the participation or the opposition clause. It also contends that no IAM representative knew of Butts's discussions with Hernandez, the EEO counselor, presenting an additional defect in his claim under the participation clause. It further argues that no reasonable juror could have believed that IAM retaliated against Butts for his complaint against TVA. We find this final contention meritorious, and reverse the denial of IAM's motion for judgment as a matter of law on that basis.[4]

---

[4]For purposes of this decision, we assume without deciding that Butts engaged in protected activity by visiting the EEO counselor to discuss the prospect of filing a complaint. This rule has been endorsed by other circuits. *See, e.g.*, *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997) ("Under the participation clause, however, there can be little doubt that Hashimoto's visit with the EEO counselor constituted participation 'in the machinery set up by Title VII.'"); *Eastland v. Tennessee Valley Authority*, 704 F.2d 613, 627 (11th Cir. 1983) (finding plaintiff's contacting of TVA EEO counselor to be protected).

There was also evidence in the record that IAM personnel became aware of Butts's consultation with Hernandez, but we need not resolve the dispute over this issue either.

IV.

Assuming that Butts made out a prima facie case of retaliation, it was effectively countered by IAM's legitimate, nondiscriminatory basis for not referring Butts for the second position in accordance with its rule of granting a preference for non-retirees in making referrals. This showing shifted the burden to Butts to introduce evidence that this proferred justification was pretextual. In his attempt to demonstrate pretext, Butts relies on the testimony of Burdette, who was involved in the referral process on a regular basis, and indicated a sense of surprise when he found out about IAM's non-retiree preference. Thus, according to Butts, even though Pierce testified that the rule had been in place since the early 1980s, Burdette's reaction indicates that it may have been selectively enforced. This possibility was to some extent enhanced by the fact that, according to Pierce, the rule was never recorded in writing. Further, Butts was referred for the position that was open in 2000 (as well as another position of which he was not aware in 1999) before he ever looked into filing an EEO complaint, but was not referred pursuant to the non-pensioner preference after he looked into the complaint.

According to IAM, however, the reason that Butts was referred in 2000 but not in 2001 is that the union did not have enough non-pensioners to meet TVA's first request for referral, but did have enough for the second referral. TVA offered unrebutted evidence on this point in the form of the testimony of Paul Randolph, a business representative for District Lodge 711. Randolph testified that he was aware of the non-pensioner preference prior to the 2000 referral, but that Butts was referred nonetheless because the union had fewer members interested in the 2000 position than TVA requested be referred. Thus, in 2001, when the union had enough active members to fill the referral

requested by TVA, its exclusion of Butts was pursuant to a straightforward application of the rule, rather than any selective enforcement or retaliation against Butts for filing his complaint.

Against this evidentiary backdrop, IAM argues that no reasonable jury could have concluded that IAM would have any reason to retaliate against Butts when it was TVA, not IAM, that was the subject of his discrimination complaint. *See Barnes*, 401 F.3d at 736 ("When reviewing the facts of a discrimination claim after there has been a full trial on the merits, we must focus on the ultimate question of discrimination rather than on whether a plaintiff made out a prima facie case. Thus, the proper inquiry following the presentation of all evidence in a Title VII case is whether plaintiff has proven its case by a preponderance [of the evidence.]"). IAM claims that the jury verdict was based on mere speculation, and therefore is not sustainable, citing *Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 944 (6th Cir. 1987), and *Wilkins v. Eaton Corp.*, 790 F.2d 515, 523 (6th Cir. 1986). In both of these cases, we rejected jury verdicts that we found to be based solely on mere speculation of discrimination. In each case, these determinations were connected to our rejection of the plaintiffs' theory of pretext.

While not non-existent, Butts's showing of pretext is similarly weak in this case. Although the jury was entitled to consider his arguments suggesting that the referral rule was selectively enforced, IAM introduced a reasonable and legitimate explanation for why Butts was referred in 2000 but not in 2001, based on the number of active members available for each referral. The facts that the rule was not written down and that Burdette was unfamiliar with it do not, on their own, demonstrate that it was pretextual. At best, Butts's showing of pretext presents a close question for these reasons. Butts's burden is somewhat greater, however, than merely producing evidence of

pretext. *See Hedrick v. W. Reserve Care Sys.,* 355 F.3d 444, 461 (6th Cir. 2004) ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.") (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)). This does not mean that after proving pretext, Butts was required to introduce additional evidence of retaliation. *See Reeves*, 530 U.S. at 148 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). It does mean, however, that merely introducing a de minimis prima facie case and some slight evidence of pretext will not always, on its own, defeat judgment as a matter of law. As the *Reeves* Court further explained,

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

*Id*. at 148-49. Thus, our focus on the ultimate question of retaliation includes the strength of Butts's prima facie case and of his showing of pretext, as well as other relevant evidence of retaliation.

Aside from his relatively weak prima facie case and arguments regarding pretext, Butts has come forward with no other facts that support him on the ultimate question of retaliation. Assuming that the prima facie case and pretext evidence may have scraped past the minimal threshold required to survive summary judgment, we do not find them strong enough to establish a case of retaliation on their own, particularly in light of IAM's compelling argument that it would have had no reason

to retaliate against Butts when his efforts to file a grievance were directed toward TVA, not IAM.[5]

We therefore do not believe that a reasonable juror could have, without impermissibly speculating, found IAM's decision not to refer Butts pursuant to its non-pensioner preference to be retaliatory. Butts offered no theory supported by any evidence to counter this argument. Thus, in light of the relative weakness of Butts's prima facie case and showing of pretext, and his failure to make any other showing on the ultimate question of retaliation, we find that the district court erred by not entering judgment as a matter of law in favor of IAM.

V.

Butts cross-appeals the district court's entry of summary judgment on behalf of IAM with respect to his claim that IAM's preference for non-pensioners violates the ADEA itself. Butts argued that IAM's policy of granting a referral preference to non-pensioners had a disparate impact under the ADEA as a facially neutral policy that had the effect of discriminating against older workers. The Supreme Court recently acknowledged that a cause of action for disparate impact is available under the ADEA in *Smith v. City of Jackson*, 544 U.S. 228, 235 (2005). Although the district court expressed doubt about the viability of such a claim in its pre-*Smith* summary judgment opinion, it ultimately denied the claim because Butts failed to come forth with any evidence of the impact of the rule on older workers.

_____

[5]This is not to say that as a matter of law, an employee cannot prove retaliation against a union when his protected job action involved a complaint targeted at the employer, instead of the union. If, for example, Butts had made some showing that IAM jealously guarded its relationship with TVA, and resented EEO complaints that it believed undermined its authority over the referral process, there would be some non-speculative reason to believe that IAM may have retaliated against Butts for filing a complaint against TVA. Butts presented no such evidence here, however.

To establish a prima facie case of disparate impact, a plaintiff must not only identify a particular policy that he alleges is discriminatory in operation, but must "through relevant statistical analysis prove[] that the challenged practice has an adverse impact on a protected group." *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005). Butts's complete failure to make any such statistical showing is fatal to his claim here. Although it might not be unreasonable to assume that a policy that granted a preference to non-retirees would discriminate against older workers, IAM points out that workers were able to retire at any age, regardless of years of service, and draw a pension. This fact might not refute the possibility that the policy has a disparate impact on older workers, but this possibility only demonstrates why Butts has to make some statistically-supported showing of the rule's disparate impact, as we are now left only to speculate about it. The district court correctly granted summary judgment to IAM on this claim.

VI.

For the foregoing reasons, we reverse the district court's denial of IAM's motion for a judgment as a matter of law, and remand for proceedings consistent with this opinion. We affirm the district court's entry of summary judgment on Butts's disparate impact claim.