NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0426n.06
Filed: July 17, 2008

No. 07-3269

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| NANCY ADAMS, et al., | ) | |
| | ) | |
| **Plaintiffs-Appellants,** | ) | |
| | ) | **ON APPEAL** FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| LUCENT TECHNOLOGIES, INC, | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | **O P I N I O N** |
| | ) | |
| | ) | |

BEFORE:     MOORE and CLAY, Circuit Judges; SCHWARZER,[*] District Judge.

**WILLIAM W SCHWARZER, District Judge.**  Plaintiffs, former employees of Lucent

Technologies, Inc. ("Lucent"), brought this action alleging violations of the Age Discrimination

in Employment Act ("ADEA"), 9 U.S.C. §§ 621 *et seq*.  Plaintiffs contend that they suffered age

discrimination when Lucent made an offer of enhanced voluntary retirement benefits to its

employees during a period when Lucent was engaged in merger negotiations with Alcatel S.A., a

French competitor of Lucent's, and then withheld the information that the negotiations had

collapsed until after many of the most senior employees had accepted the offer.  They also

contend that the district court erred when it barred them from taking the deposition of Lucent's

---

[*]The Honorable William W Schwarzer, Senior United States District Judge for the
Northern District of California, sitting by designation.

former C.E.O. The district court granted Lucent's motion for summary judgment and plaintiffs appeal. We affirm.

## I. BACKGROUND

The events which gave rise to this action took place at Lucent's Columbus Works, a facility that manufactured telecommunications equipment in Columbus, Ohio. These events occurred at a time that has been described as the "telecom meltdown," when companies in the telecommunications industry suffered severe and often fatal financial reverses. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 354 n.4 (3d Cir. 2007) (describing the "'telecom meltdown' of 2000-2001"). To settle unfair labor practice charges, and anticipating a need to lay off employees because of subcontracting or outsourcing, Lucent entered into a Memorandum of Agreement ("MOA") with the collective bargaining agent of its Columbus employees in February 2001. The MOA provided enhanced benefits for employees who lost their jobs as a result of outsourcing or the sale of the plant. It also required Lucent to first offer these benefits as part of a voluntary package, giving employees with greater seniority the option to retire early and obtain these benefits. However, MOA benefits would not be available in the event of a merger or sale of Lucent.

At the time, negotiations for the sale of the Columbus Works were ongoing. In connection with the anticipated sale, Lucent announced on May 1, 2001 that it would implement the MOA to eliminate approximately 400 positions at the Columbus Works through a voluntary reduction in force for employees with two or more years of service, called the "Special Voluntary Offer" ("SVO"). Employees who elected the SVO would receive enhanced benefits, would be separated from employment on June 30, 2001, and would not be offered employment with the contract manufacturer who was to purchase the plant. The offer was popular; over 900 employees out of some 2,400 asked

to participate. In the end Lucent accepted 566 out of 908 elections, and their employment was terminated on June 30, 2001. Employees' elections were accepted on the basis of seniority.

Meanwhile, Lucent and Alcatel were in negotiations about a possible merger. On April 27, 2001, *The Wall Street Journal* reported on the merger discussions. While these discussions were taking place, the SVO was going forward: requests to participate in the SVO were to be submitted between May 11 and May 29, 2001, at 3 p.m. Media reports on the Lucent-Alcatel merger talks next appeared on May 18, 2001, when *The New York Times* and *The Wall Street Journal* published articles; news coverage of the merger talks continued over the next ten days. The news reports about the mergers caused employees at the Columbus Works to worry about how a merger would affect their jobs and how the possibility of a merger should affect their decisions about the SVO. The union distributed handbills to its members advising that the merger, should it occur, was not expected to impact the sale of the Columbus Works. Uncertainty about the merger created a stressful atmosphere at the Columbus Works in the days leading up to the May 29 deadline. Many of the employees who submitted applications for the SVO did so in the last few days before the deadline.

Out of the approximately 2,400 employees at the Columbus Works, 908 submitted SVO applications by the 3 p.m. deadline on May 29; applications from 506 employees, comprising the more senior employees, were accepted. Meanwhile, the Lucent-Alcatel merger talks had broken down over the May 26-28 Memorial Day weekend. No announcement came until after the markets had closed on May 29, when Lucent issued a release between 4:00 and 4:30 p.m. advising that its merger talks with Alcatel had failed. Lucent did not permit employees at the Columbus Works who had submitted applications for the SVO to rescind their elections after the announcement of the talks'

failure.

The sale of the Columbus Works to the contract manufacturer fell through in June 2001, but negotiations with another manufacturer, Celestia Inc., began in July 2001, and that sale was completed in December 2001. To further reduce the workforce at the Columbus Works prior to the sale, Lucent offered a second round of early retirement elections in September 2001. Benefits under this second voluntary offer exceeded the first by $15,000, and 225 employees participated. Less than a year after taking over the Columbus Works, Celestia closed the facility and laid off the entire workforce.

The plaintiffs, former Lucent employees at the Columbus Works whose first-round SVO applications were accepted, filed charges of age discrimination against Lucent with the Ohio Civil Rights Commission ("OCRC") and the federal Equal Employment Opportunity Commission ("EEOC") on December 28, 2001. In their charges to the OCRC, the plaintiffs complained of Lucent's decision to offer a second voluntary retirement opportunity in the fall of 2001, and of the extra $15,000 available to those who participated in it. The OCRC found no probable cause to believe that Lucent had engaged in unlawful discriminatory practices and dismissed the case. The EEOC adopted the OCRC's findings and dismissed the charges in October 2002. The EEOC issued a right to sue letter to the plaintiffs in January 2003.

In April 2003, the plaintiffs filed the instant action, alleging age discrimination in violation of the ADEA.[1] The plaintiffs challenged the SVO, Lucent's refusal to keep employees updated on

---

[1] The plaintiffs also alleged violations of Ohio Revised Code § 4112.01 *et seq.* (the Ohio Civil Rights Act) and Ohio common law. The district court dismissed the plaintiffs' state law claims as barred by their election of an administrative remedy, because the plaintiffs had filed charges with the state administrative agency without indicating that they were filing the charges
(continued...)

4

the status and significance of the merger talks, and Lucent's decision to announce the failure of the merger talks only after the SVO application deadline.

During discovery, plaintiffs sought to depose Lucent's former C.E.O., Henry Schacht, to obtain testimony on the failed Lucent-Alcatel merger negotiations. A magistrate judge found that the plaintiffs did not show that the information sought would not be reasonably available from another source, as required when seeking to depose a key executive officer with multi-faceted responsibilities for the overall conduct of a business entity. The magistrate judge granted Lucent's motion for a protective order pursuant to Fed. R. Civ. P. 26(c), quashing the deposition of Schacht, on the condition that Schacht provide an affidavit about the proposals and management recommendations stemming from the last few days of the merger negotiations.

In January 2007, the district court granted Lucent's motion for summary judgment. The plaintiffs had argued, in opposition to Lucent's summary judgment motion, that Lucent's actions surrounding the SVO constituted disparate impact discrimination. In its Opinion and Order, the court observed that the plaintiffs had conflated disparate treatment and disparate impact discrimination, and found that the plaintiffs failed to establish a prima facie case of disparate impact discrimination, as required by *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989). The court noted that it was not clear which policy was alleged by the plaintiffs to be discriminatory: Lucent's acceptance of SVO elections using a seniority preference, or Lucent's decision to announce the termination of merger discussions after the 3 p.m. deadline on May 29, 2001. The court pointed out that a policy challenged under disparate impact theory had to be neutral with respect to age, but that

[1](...continued)
solely to comply with the requirements of the ADEA. The plaintiffs then withdrew all state law claims.

5

the plaintiffs argued that the SVO was a "subterfuge for age discrimination." Joint Appendix ("J.A.") 189 (January 3, 2007 Op. and Order, at 15). As for the timing of the announcement that the merger talks had failed, the court found that "[t]here is no basis in fact for Plaintiffs' allegation that Defendant intentionally withheld the information that the Lucent-Alcatel merger talks were unsuccessful in order to have the older employees accept early retirement." *Id.*

The court also determined that the plaintiffs "offer[ed] nothing to support their assertion that either the failure to inform Plaintiffs of the unsuccessful conclusion of the merger talks prior to the 3:00 p.m. EST deadline or the offering of the SVO resulted in a significant disparate impact on . . . Lucent employees 40 years of age and older." J.A. 190 (January 3, 2007 Op. and Order, at 16). The plaintiffs had offered no statistical analysis to demonstrate a disparate impact resulting from either of these events, and could only point to the number of older workers who applied for the SVO, which the court found to be "legally insufficient." *Id.*

Even assuming that the plaintiffs could establish a prima facie case, the court found that Lucent had presented "reasonable factor[s] other than age" justifying its decision to announce the failure of the merger talks after the stock market had closed and its reliance upon seniority in selecting SVO applicants. J.A. 191 (January 3, 2007 Op. and Order, at 17).

## II. ANALYSIS

We review a district court's grant of summary judgment de novo. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir.2004). We will affirm a summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not appropriate when the evidence raises a genuine issue

6

about a material fact, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of demonstrating that there are no genuine issues of material fact, which may be fulfilled by showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986). We view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiffs argue that the prospect of a Lucent-Alcatel merger caused them to be concerned that they could lose their jobs without receiving the benefits under the MOA. They contend that Lucent management, by withholding information about the failure of the merger talks until after the SVO deadline had passed, forced them to make a decision to accept early retirement and thereby lose their seniority. By this deceptive scheme, they contend, Lucent targeted its most senior employees, which they say could support a finding of intentional disparate treatment discrimination as well as disparate impact discrimination. The plaintiffs point out that although they did not uncover "direct evidence of planned, intentional discrimination," they did "unearth a great deal of circumstantial evidence indicating Lucent practiced deception on its employees in order to separate the most senior members," and that "[t]his evidence, conjoined with the clearly disparate impact on those senior employees could well result in a jury reasonably finding intentional discrimination." Pl's-Appellants' Opening Br., at 12-13.

**1.    Disparate treatment discrimination**

To establish a prima facie case of age discrimination under the ADEA, plaintiffs must

proffer evidence of the following: (1) that plaintiffs are between 40 and 65 years old; (2) that they were qualified for their particular positions; (3) that they were subjected to an adverse employment action; and (4) in the case of a reduction in force, additional evidence – direct, circumstantial, or statistical – tending to indicate that the employer singled out the plaintiffs for discharge for impermissible reasons, i.e., that age was a factor in eliminating their position. *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1999).

The first two prongs of this analysis are not disputed. Plaintiffs cannot, however, demonstrate that they were subjected to an adverse employment action. In their reply brief, plaintiffs contend that they suffered an adverse employment action in the form of a constructive discharge. A constructive discharge exists "if working conditions are such that a reasonable person in the plaintiff's shoes would feel compelled to resign." *Scott*, 160 F.3d at 1127 (internal quotations marks and citation omitted). In *Scott*, the court found a constructive discharge when the plaintiff chose to retire in order to receive a lump sum payment, monthly retirement checks, and continued health benefits, *id*. at 1124, with "the understanding that he did not have the option of continued employment." *Id.* at 1128. The plaintiff was told that he was losing his job anyway, and he opted to accept retirement, instead of a layoff status that carried fewer or no benefits. The court found that the doctrine of constructive discharge applied to an employee who has accepted an offer of early retirement with the understanding that he or she has "no definite prospect of continued employment with the company." *Id*. at 1128.

The facts here do not support a finding of constructive discharge. The plaintiffs were not certain to lose their jobs and did not accept the SVO as an alternative to layoff status. *See Scott*, 160 F.3d at 1127. Although Lucent had announced plans to sell the Columbus Works and to

8

reduce the workforce by 400 employees, the plaintiffs would have been protected from any layoffs by their relative seniority. Their uncertainty regarding the effect of the potential merger on their jobs does not translate into a constructive discharge. *See, e.g., Agnew v. BASF Corp.*, 286 F.3d 307, 310-11 (6th Cir. 2002) (in age discrimination case under Michigan law, which follows the federal *McDonnell Douglas* framework, "[a]n employee who quits a job in apprehension that conditions may deteriorate later is not constructively discharged."). Nor is there support for the plaintiffs' argument that Lucent induced them to submit SVO applications by spreading false or deliberately misleading information about the merger. There is no evidence that the plaintiffs were effectively told that they were losing their jobs, or that they had information from management indicating that they should feel "compelled to resign."

Even if we were to assume that the plaintiffs' separation from their employment constituted an adverse employment action, plaintiffs cannot satisfy the fourth prong of the prima facie case. They have not "presented evidence that, when viewed in [their] favor, would permit a reasonable jury to conclude that age was a determining factor" in Lucent's decision as to the timing of its disclosure that the merger talks had failed, or in its use of the SVO to reduce its workforce. *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 896 (6th Cir. 1997). Lucent has averred that it delayed the disclosure of information regarding the collapse of the merger talks until after the close of the financial markets in order to protect the company's stock price.[2]

---

[2] Lucent's decision to wait until after the markets had closed before announcing that its merger talks with Alcatel had failed is consistent with normal business practice regarding announcements that may affect trading in a company's stock. *See, e.g., Feder v. Elec. Data Systems Corp.*, 429 F.3d 125, 128 (5th Cir. 2005) (revised earnings announcement made after close of trading); *In re Cendant Corp. Litig.*, 264 F.3d 201, 221 (3rd Cir. 2001) (announcement of accounting regularities after close of trading); *In re Royal Appliance Sec. Litig.*, 64 F.3d 663

(continued...)

Plaintiffs have not produced any contrary evidence suggesting that age bias motivated the delayed disclosure.

Furthermore, the evidence shows that Lucent established the early retirement program to target employees with the greatest seniority for the reduction-in-force, thereby reducing the expense of the Columbus Works plant and making it a more attractive asset for sale. Plaintiffs have offered no evidence showing that Lucent singled them out on the basis of age or that age was a determining factor in Lucent's decisions. The Supreme Court and this court have distinguished retirement policies targeting age from policies targeting seniority, upholding the latter under the ADEA. *Hazen Paper Co. v. Biggins*, 507 U.S. 614, 611 (1993) ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'"); *Lyon v. Ohio Educ. Ass'n & Prof'l Staff Union*, 53 F.3d 135, 139, 139 n.4 (6th Cir. 1995) (acknowledging "the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination," but finding that plaintiffs had "offered no facts that even hint at an improper motive" in drafting the pension plan at issue). As this court observed in *Lyon*, "The ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations." *Id*. at 139 (quoting *Allen v. Diebold, Inc.*, 33 F.3d

_____

[2](...continued)
(6th Cir. 1995) (unpublished opinion) (announcement of second quarter income at close of trading); *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1274 (D.C. Cir. 1994) (announcement of major consolidation and restructuring after stock market closed); *United States v. Chestman*, 947 F.2d 551, 555 (2d Cir. 1991) (announcement of tender offer at close of trading).

674, 676-77 (6th Cir. 1994)). Because the plaintiffs have failed to show that their "protected trait actually played a role in [Lucent's] decision-making process and had a determinative influence on the outcome," *Hazen Paper Co.*, 507 U.S. at 610, they have failed to establish a prima facie case of disparate treatment discrimination under the ADEA.

## 2. Disparate impact discrimination

Plaintiffs' theory of disparate impact discrimination appears to be that Lucent's delay in announcing the collapse of the merger talks and its use of the SVO led to the termination of the more senior employees, causing a disparate impact on older employees. A prima facie case under the theory of disparate impact discrimination requires a specific, identifiable employment practice or policy that caused a significant disparate impact on employees over 40 years of age. *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005). The plaintiffs must "through relevant statistical analysis prove that the challenged practice has an adverse impact on a protected group." *Butts v. McCullough*, 237 Fed. Appx. 1, 8 (6th Cir. 2007) (quoting *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005) (relevant statistical analysis required to establish prima facie case of disparate impact discrimination under Title VII of the Civil Rights Act of 1964)); *see also Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) (noting that need for statistical analysis for a prima facie disparate impact case under Title VII).[3]

_____

[3] As the Supreme Court noted in *Smith v. City of Jackson*, the ADEA differs from Title VII by virtue of the amendments to Title VII made by the Civil Rights Act of 1991. These amendments modified the Court's holding in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989), which had "narrowly construed the employer's exposure to liability on a disparate-impact theory." *City of Jackson*, 533 U.S. at 240. The 1991 amendments did not amend the ADEA, and "*Wards Cove's* pre-1991 interpretation of Title VII's identical language remains applicable to the ADEA." *Id.* This means that ADEA plaintiffs must identify "the specific employment practices that are allegedly responsible for any observed statistical disparities." *Wards Cove*, 490 U.S. at
(continued...)

11

The district court found that the plaintiffs failed to offer a statistical analysis demonstrating an adverse impact on employees 40 years of age and older from either the timing of the announcement that merger talks had failed or the use of seniority in determining which SVO applications to accept. The plaintiffs argue without citing authority that statistical evidence is only required when "an employment practice affects employees over some interval of time," and that in any event, "the statistical evidence is that the process [Lucent's decision to accept SVO applications] started with most senior and stopped when they had been eliminated." Pl's-Appellants' Opening Brief, at 28, 30. However, as noted above, a prima facie case of disparate impact requires a showing of adverse impact through "relevant statistical analysis," and a "complete failure to make any such statistical showing is fatal to [a] claim." *Butts*, 237 Fed. Appx. at *9. Here, there is no evidence in support of the plaintiffs' claim that the timing of the announcement that merger talks had failed and the use of the SVO had a disparate impact. The plaintiffs can point only to Lucent's approval of SVO applications from workers with the most seniority as statistical evidence of the disparate impact of that practice. Seniority, however, as discussed above, does not exactly correlate with age. Because the plaintiffs have presented no such statistical evidence, they have not established a prima facie case of disparate impact discrimination.

### 3. Protective order

We have no jurisdiction to consider the plaintiffs' appeal from the magistrate judge's

---

[3](...continued)
656; *Smith*, 533 U.S. at 241. The Supreme Court further clarified in *Meacham v. Knolls Atomic Power Lab* that the *Wards Cove* requirement to identify specific employment practices remains applicable in ADEA cases. *Meacham v. Knolls Atomic Power Lab.*, --- S. Ct. ---, No. 06-1505, 2008 WL 2445207, at *12-13 (June 19, 2008).

conditional protective order quashing the deposition of former Lucent C.E.O. Henry Schacht because the magistrate judge did not exercise plenary jurisdiction and the plaintiffs failed to appeal the order to the district court judge. *See, e.g., Moon v. Harrison Piping Supply*, 465 F.3d 719, 725 (6th Cir. 2006). Even if we were to review the order, we would find no abuse of discretion. *See Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (review of district court's order granting protective order is for abuse of discretion).

### III. CONCLUSION

For the reasons discussed above, we **AFFIRM** the judgment.