[Cite as *Warden v. Dept. of Natural Resources*, 2012-Ohio-3854.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

RICHARD W. WARDEN

   Plaintiff

   v.

OHIO DEPARTMENT OF NATURAL RESOURCES

   Defendant

Case No. 2011-01232

Judge Alan C. Travis

DECISION

{¶ 1} Plaintiff brought this action alleging age discrimination under R.C. 4112.14 and 4112.99. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.[1]

{¶ 2} Plaintiff is a registered professional engineer who was employed by defendant for 29.5 years. On October 1, 2006, plaintiff accepted a two-year buyout and retired from his position as a Natural Resources Engineer 4 in defendant's Mineral Resources Management (MRM) Division, after 31.5 years of state service. Plaintiff was 51 years old when he retired.

{¶ 3} Following plaintiff's retirement, legislation was enacted that required defendant to prepare an estimate of the cost to reclaim coal mining sites in the event that the coal mining operator forfeited. To comply with the new legislation, defendant's MRM division was required to create a program that could perform such estimates. In March 2007, MRM's Division Chief, John Husted, contacted plaintiff to see if he would

---

[1] Plaintiff's February 28, 2012 motion to strike "defendant's argument II" is DENIED.

resume his employment with MRM on an intermittent basis in order to develop the required program. Plaintiff agreed and he was awarded a one fiscal year, "1000-hour" contract as an Engineer 4. Plaintiff was subsequently granted three additional 1000-hour contracts.

{¶ 4} In the fall of 2009, MRM division officials began discussing whether to create a full-time Natural Resources Engineer 3 position to perform the work that plaintiff was performing under his intermittent assignments. During these discussions, Husted and Susan Grant, plaintiff's immediate supervisor, approached plaintiff and asked him whether he would be interested in a full-time Natural Resources Engineer 3 position. On November 20, 2009, plaintiff informed Grant that he was interested in the position. (Plaintiff's Exhibit 22.)

{¶ 5} In early 2010, defendant posted a position for a full-time Engineer 3. On February 24, 2010, plaintiff applied for the posted position. At the time of his application, plaintiff was still working for defendant pursuant to his most recent 1,000-hour contract. On March 31, 2010, Mamie Hollenback, defendant's human resource associate, mailed a letter to plaintiff notifying him that an interview had been scheduled for him on April 29, 2010. However, according to Hollenback, prior to plaintiff's interview, she informed the interview panel that former employees who had retired could not be rehired in a full-time position. Plaintiff's interview went forward as scheduled. At the conclusion of the interviews, plaintiff had earned the highest overall score.

{¶ 6} On May 5, 2010, Husted informed plaintiff that it was not likely that he would be selected for the full-time position because he was a retiree. Grant and Lanny Erdos, Deputy Chief of the Coal Regulatory Mine Safety and Industrial Minerals program, also informed plaintiff that he would not be selected for the full-time Engineer 3 position because the administration would not allow an individual who had retired from the agency to be rehired into another full-time position. Plaintiff complained to Husted,

Grant, and Erdos, that such a policy would result in the employment of a less qualified individual. Plaintiff's final day in defendant's employment was June 5, 2010.

{¶ 7} Defendant eventually selected Jared Knerr for the Engineer 3 position. Knerr was 39 years old when he was hired. Plaintiff was 54 years old when he learned that he had been rejected for the full-time position. Plaintiff asserts that defendant's failure to hire him constitutes discrimination on the basis of age in violation of R.C. 4112.14 and 4112.99.

{¶ 8} R.C. 4112.14(A) provides: "No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." In addition to Ohio case law, Ohio courts have consistently looked to federal cases interpreting federal civil rights and age discrimination legislation. *Mauzy v. Kelly Scvs., Inc.*, 75 Ohio St.3d 578, 1996-Ohio-265; *Barker v Scovill, Inc.*, 6 Ohio St.3d 146 (1983); *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.,* 61 Ohio St.3d 607, 609 (1991), ("[T]his court concluded that the evidentiary standards applicable to a determination regarding a violation of Title VII of the Civil Rights Act of 1964 were likewise operable with respect to ascertaining whether a violation of *R.C. Chapter 4112* has occurred.")

{¶ 9} A plaintiff claiming age discrimination may proceed upon theories of disparate treatment or disparate impact. *Smith v. City of Jackson*, 544 U.S. 228 (2005); *Adams v. Lucent Technologies, Inc.*, 284 Fed. Appx. 296 (6th Cir.2008). "To prevail on a theory of disparate treatment discrimination, a plaintiff must prove that the protected trait motivated his employer's decision. * * * To prevail on a theory of disparate impact age discrimination, a plaintiff must prove that an employer's facially neutral policies or practices fall more harshly on a protected group." *Caldwell v. Ohio State Univ.*, 10th Dist. No. 01AP-997, 2002-Ohio-2393, ¶66. (Internal citation omitted.)

**DISPARATE TREATMENT**

{¶ 10} Plaintiff's claim of disparate treatment may be proven either by direct evidence of discrimination or through the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Harris v. Metro. Govt. of Nashville and Davidson Cty., Tenn.*, 594 F.3d 476, 485 (6th Cir.2010).

{¶ 11} Plaintiff asserts that the testimony of former ODNR director Sean Logan and a memorandum (Bates memorandum) authored by Human Resources Director Steve Bates provide direct evidence of age discrimination. Defendant argues that it did not hire plaintiff because of its policy prohibiting a retired former employee from being rehired in the same or similar position; that his age was not a factor.

{¶ 12} Logan testified that the employment decision was motivated by a desire to restrict the hiring of recently retired former employees and that plaintiff's age was not a consideration. Indeed, the Bates memorandum states that "[t]he re-employment of State of Ohio/Public Employer Retirees will be strictly limited to intermittent positions that require specialized knowledge and/or experience * * *." The Bates memorandum does not reference age as a factor for the policy. (Plaintiff's Exhibit 27.) Accordingly, the court finds that plaintiff has failed to present direct evidence of age discrimination.

{¶ 13} "To establish a prima facie case of age discrimination under the *McDonnell Douglas/Burdine* framework, a plaintiff must establish: (1) he was at least forty years old when the alleged discrimination occurred; (2) he applied for and was qualified for a position for which the employer was seeking applicants; (3) despite his qualifications he was rejected; and (4) the employer selected a substantially younger person for the position. * * * If the plaintiff demonstrates a prima facie case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision. * * * Once the defendant articulates a legitimate nondiscriminatory reason for its action, the burden

shifts back to the plaintiff to establish that the defendant's 'proffered reason was a mere pretext for intentional age discrimination.'" *Moore v. Abbott Labs.*, 780 F.Supp.2d 600, 610 (S.D.Ohio 2011), quoting id. (Internal citations omitted.)

{¶ 14} It is not disputed that plaintiff is a member of a protected class; that he was qualified for the position; that he was rejected; and that defendant selected a substantially younger person for the position. Defendant asserts that it nonetheless had legitimate, nondiscriminatory reasons for declining to hire plaintiff.

{¶ 15} Logan testified that when he was at the age of 24, he was elected to the Ohio House of Representatives for Columbiana County where he served for a period of 10 years. In 2001, he was elected as a Commissioner of Columbiana County and served until 2007, when former Governor Ted Strickland appointed him to serve as the Director of the Ohio Department of Natural Resources (ODNR). Logan testified that his experience in the Ohio House and as a County Commissioner, taught him that public employees and Ohio legislators often chose to retire from state service to begin collecting their retirement benefits only to be rehired in the same or similar position. Logan stated that this phenomenon was referred to pejoratively as "double-dipping." Logan asserted that "double-dipping" creates a "distrust with the public" and that in his opinion, to retire means to leave the position. As a result, while at ODNR, Logan instituted a policy prohibiting the rehiring of retired public employees in the same or similar position.

{¶ 16} Additionally, the Bates memorandum states as follows: "The re-employment of State of Ohio/Public Employer Retirees will be strictly limited to intermittent positions that require specialized knowledge and/or experience. These appointments should be for less than 1000, project driven and non-reoccurring. Requests to re-employ retirees will be evaluated on the following criteria:

{¶ 17} "• Project (description)

{¶ 18} "• Anticipated Project Duration (should be less than 10 pay periods & non-reoccurring)

{¶ 19} "• Specialized Knowledge/Experience Required

{¶ 20} "• Specialized Knowledge/Experience of the Individual Requested

{¶ 21} "• What Other Options were Explored

{¶ 22} "The preceding rationale/criteria are based on the following:

{¶ 23} "• State of Ohio/Public Employer Retirees are already Receiving Compensation

{¶ 24} "• High Unemployment Figures in the General Population in Most Specialties

{¶ 25} "• Baseline Skills (Classification Minimum Qualifications) and OJT Should Suffice in Most Cases due to Anticipated Project Duration

{¶ 26} "• Encourage Better Planning on the Part of the Respective Division/Office Regarding Key Programs and/or Positions

{¶ 27} "Requests to re-employee [sic] a retiree will continue to be routed through OHR; however these requests must be approved by your Deputy Director and the Assistant Director." (Plaintiff's Exhibit 27.) Accordingly, the court concludes that defendant has presented a legitimate, nondiscriminatory reason for not hiring plaintiff.

{¶ 28} Plaintiff argues that defendant's policy prohibiting the rehiring of retirees to the same or similar position was a mere pretext for intentional age discrimination. To demonstrate pretext, plaintiff must prove either: "'(1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the [refusal to hire], or (3) that the proffered reason was insufficient to motivate the [refusal to hire].'" *Owens v. Boulevard Motel Corp.*, 10th Dist. No. 97APE12-1728 (Nov. 5, 1998), quoting *Frantz v. Beechmont Pet Hosp.*, 117 Ohio App.3d 351, 359 (1996).

{¶ 29} Plaintiff was interviewed by Grant, Jason Craven, and Brent Heavilin. Hollenback was also present for the interview but did not actively participate in

questioning the candidate. Hollenback testified that prior to the interview she informed the panel that they could not hire plaintiff for the position; however, Grant, Craven, and Heavilin all testified that, prior to the interview, they were unaware of any policy prohibiting the rehiring of retirees to the same or similar position and that they were unaware of the existence of the Bates memorandum.

{¶ 30} Hollenback explained that she wrote "recently retired employee" on the panel's interview chart so that the panel would understand that plaintiff could not be hired because he was a retiree. (Plaintiff's Exhibit 9.) Hollenback testified that she was informed of such a policy by her supervisor, Patti Nibert, who also instructed her not to cancel plaintiff's interview. Hollenback denied ever seeing the Bates memorandum.

{¶ 31} Grant, Craven, and Heavilin all testified that plaintiff received the highest score on the interview. Craven and Heavilin both testified that they recommended plaintiff for the position. Grant testified that she would have recommended plaintiff for the position; however, after speaking with Erdos, her supervisor, regarding the position, she was advised that the panel needed to consider the other three applicants for the position because plaintiff could not be hired.

{¶ 32} Erdos testified that he spoke with Assistant Director, Richard Milleson, who advised him that ODNR could not rehire a retired former employee. Erdos asserted that he has never seen the Bates memorandum and that he was unaware of any policy prohibiting the rehiring of a former employee who had retired. Husted, Erdos's supervisor, testified that he too spoke with Milleson regarding hiring plaintiff. According to Husted, he was informed that the position could not be offered to plaintiff because he was a recently retired former employee. Husted testified that he was unaware of any policy prohibiting the rehiring of retired former employees and that he was unaware of the existence of the Bates memorandum. Husted stated that Milleson did not object to plaintiff's potential hiring on any other basis.

{¶ 33} According to Milleson, plaintiff had completed the tasks required of him under the 1,000-hour contracts and the Engineer 3 position did not require plaintiff's expertise or skill set. Milleson testified that the administration preferred not the rehire a retired former employee for the same or similar position, although he was unaware of any such written policy while he was the assistant director.

{¶ 34} Although Logan testified that defendant had a policy prohibiting the rehiring of retired former employees, he admitted that he never issued a directive to memorialize the policy or a directive to distribute the policy to the division chiefs or human resource staff. Logan asserted, however, that there were exceptions to such a prohibition on rehiring formerly employed retirees. Logan stated that Thomas Tugend, current Deputy Chief of MRM, was rehired despite having previously retired from a similar position. Logan explained that exceptional circumstances necessitated Tugend's hiring. According to Logan, newly enacted legislation required additional inspectors and a new regulatory structure in the oil and gas industry. As a result, Logan determined that Tugend had the expertise necessary to oversee the expeditious development of the new regulatory structure and ensure that it met public safety requirements. Milleson testified that both he and Logan personally interviewed Tugend and that he was the most qualified applicant for the position. Logan testified that the Engineer 3 position did not have that same level of urgency and that he felt that the department needed to look at other candidates. According to Logan, the Engineer 3 position could be filled by another person with some on the job training. Logan further admitted that he did not discuss specific position duties for the Engineer 3 position when presented with the possibility of hiring a retired former employee for the position.

{¶ 35} Based upon the forgoing, the court concludes that plaintiff has failed to prove that defendant's reason for not hiring plaintiff was a mere pretext for intentional age discrimination. Indeed, the court is convinced by the testimony of Logan, Hollenback, Husted, Erdos, and the members of the interview panel, that plaintiff was

not hired solely because of his status as a retired former employee. Although the Bates memorandum was not widely publicized and the position from which plaintiff retired was not the same position for which he applied, Logan credibly testified that the reason why plaintiff was not hired for the position was because of his status as a retired former employee.

## DISPARATE IMPACT

{¶ 36} "To establish a prima facie case of disparate impact, a plaintiff must: (1) identify the 'particular employment practice'; (2) show a disparate impact on a protected group; and (3) prove that the employment practice caused the disparity." *Miller v. Potash Corp. of Saskatchewan, Inc.*, Allen App. No. 1-09-58, 2010-Ohio-4291, ¶49, citing *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84 (2008); *Caldwell v. Ohio State Univ.*, 10th Dist. No. 01AP-997, 2002-Ohio-2393. "[O]nce a plaintiff establishes a prima facie case of disparate impact, the employer has the opportunity to rebut the presumption of discrimination by producing evidence of a 'business justification' for its 'neutral' hiring criteria, or, under the ADEA, to demonstrate that the employer's actions were based upon a 'reasonable factor other than age.'" *Id.*, at fn. 11, citing *Little Forest Med. Ctr., supra* and *Meacham, supra*; *see also Shollenbarger v. Planes Moving & Storage*, 297 Fed. Appx. 483 (6th Cir.2008); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387 (6th Cir.2008).[2] "At that point, the burden shifts back to the plaintiff to show either that the employer's reason is a pretext for discrimination, or that there exists an alternative employment practice, without the disparate impact, that also serves the employer's legitimate interests." *Abbott v. Federal Forge, Inc.*, 912 F.2d 867, 872 (6th Cir.1990); *Dunnigan v. City of Lorain*, 9th Dist. No. 02CA008010, 2002-Ohio-5548.

---

[2]The Supreme Court of Ohio has not yet addressed a disparate impact age discrimination case.

{¶ 37} Plaintiff has identified defendant's policy prohibiting the rehiring of retired former employees to the same or similar position as the potentially offensive employment practice. Plaintiff testified that as a state employee he participated in the Ohio Public Employees Retirement System (OPERS); that he accepted a two-year buyout in 2006; and that he retired that same year with 31.5 years of state service credit.

{¶ 38} R.C. 145.32 provides, in part, that "[a] member, who has passed his sixtieth birthday and has five or more years of total service credit, or has twenty-five or more years of total service credit and has attained his fifty-fifth birthday, or has thirty or more years of total Ohio service credit, regardless of age, may file with the public employees retirement board an application for retirement."

{¶ 39} Given the above cited provisions, defendant's prohibition against rehiring retired former employees impacts only those prospective employees who are over the age of forty.[3] And, in this instance, the policy was the sole reason that plaintiff was not hired for the Engineer 3 position.  Accordingly, plaintiff has established a prima facie case of disparate impact age discrimination.

{¶ 40} Logan testified that as a result of his service in the Ohio House and as a County Commissioner, he developed the opinion that employees who retired from public service should not be rehired in the same or similar position.  Logan explained that his experiences dealing with budget issues and his knowledge regarding the negative public perception of alleged "double-dipping" motivated him to create the policy.  Logan testified that he viewed this subject as a "public trust issue."  According to Logan, when a public servant retires, the public expects that person to leave the position.

---

[3]As a general rule, individuals under the age of fourteen are not allowed to work in Ohio.  *See* R.C. 4109.06 and 3331.01.

{¶ 41} Logan stated that because of his experiences in the Ohio House and as County Commissioner, he resolved to prevent "double-dipping" to the extent that he could. As a result, while at ODNR, Logan instituted a policy prohibiting the rehiring of retired public employees to the same or similar position, although he admitted that he did not direct anyone to memorialize such a policy and that he did not distribute such a policy to the management staff. Logan testified that he held meetings to discuss such a policy; however, he admitted that the policy was not a specific agenda item at any meeting and that there are no contemporaneous minutes memorializing discussions of the issue.

{¶ 42} According to Logan, the Bates memorandum represents Bates' understanding of the policy, but it is not itself his policy. Logan further admitted that the department did not receive any negative publicity when it rehired Tugend to the same position from which he had retired. Plaintiff testified that at no point did anyone inform him that when he retired, he could no longer be rehired because of his status as a retiree.

{¶ 43} Logan also admitted that while the term "double-dipping" has a negative connotation, rehiring former retired employees to the same or similar position is both legally permissible and may actually save the department money. In this instance, plaintiff testified that he was paid $79,000 as an Engineer 4, but that he was willing to accept the Engineer 3 position which had a salary of $58,000. Additionally, Erdos testified that any other person hired for the Engineer 3 position would require 6-12 months of training just to reach plaintiff's level of proficiency. Moreover, Erdos asserted that not hiring plaintiff actually made the division less productive over a period of time. Logan stated that he was unaware of, and did not consider, an assessment regarding division productivity when making the decision not to rehire plaintiff for the Engineer 3 position. Furthermore, Logan admitted that he did not discuss specific job duties or

qualifications in relation to plaintiff's application for employment in the Engineer 3 position in order to determine whether an exception to the policy was warranted.

{¶ 44} The court concludes that defendant has failed to demonstrate that its actions were based upon a reasonable factor other than age. Despite Logan's testimony that his policy promotes public trust, he acknowledged that he received no negative publicity when he decided to rehire Tugend to the same position. Furthermore, Logan acknowledged that "double-dipping" may actually save a department money. Indeed, Erdos testified that any other person hired would require 6-12 months of additional training to reach the level of productivity that plaintiff would have provided had he been hired for the position and that by not hiring plaintiff, the division was actually less productive. Thus, there is an absence of proof that the policy promotes public trust in MRM.

{¶ 45} Moreover, each of the members of the interview panel testified that plaintiff was the most qualified applicant for the position and received the highest interview score. Grant acknowledged that Knerr received the third highest score on the interview. Finally, Logan admitted that he was unaware of any productivity assessment by Erdos regarding hiring for the Engineer 3 position and that he never had a discussion with anyone regarding plaintiff's qualifications for the position. In short, defendant has failed to demonstrate that its actions were based upon a reasonable factor other than age. Accordingly, judgment shall be rendered in favor of plaintiff.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

RICHARD W. WARDEN

    Plaintiff

    v.

OHIO DEPARTMENT OF NATURAL RESOURCES

    Defendant

Case No. 2011-01232

Judge Alan C. Travis

## JUDGMENT ENTRY

{¶ 46} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiff. The case will be set for trial on the issue of damages.

 

_____
ALAN C. TRAVIS
Judge

cc:

Emily M. Simmons
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Merl H. Wayman
425 Metro Place North, Suite 420
Dublin, Ohio 43017

003
Filed April 4, 2012
To S.C. reporter August 24, 2012