**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name:  06a0880n.06**
**Filed:  December 6, 2006**

**No. 06-3172**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOHN ALFREY, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| AK STEEL CORP., | ) | |
| | ) | **O P I N I O N** |
| Defendant-Appellee. | ) | |

BEFORE:    KEITH and McKEAGUE, Circuit Judges; and CLELAND, District Judge.[*]

**McKEAGUE, Circuit Judge.**  Plaintiff John Alfrey appeals the district court's decision to grant defendant AK Steel Corporation's motion for summary judgment in Alfrey's action for age discrimination in employment.  For the reasons that follow, we affirm the district court.

**I.  BACKGROUND**

John Alfrey ("Alfrey") had been an employee of AK Steel Corporation ("AK Steel") at its Middletown, Ohio plant for thirty years between May of 1972 and December of 2002.  In January of 2001 he was promoted to the position of truck master, an hourly-paid "crew chief" responsible for supervising a crew of truck drivers.  In November of 2002, Alfrey received a one-day disciplinary

---

[*]Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

suspension for working a midnight shift without his personal protective equipment, in violation of the AK Steel Safety Rules. After Alfrey's suspension, on one occasion he played a tape of the song "Take This Job and Shove It" repeatedly, loudly enough that other workers could hear it. Hourly employees on Alfrey's crew began complaining that he was not advising them of safety updates distributed by management. In late November 2002, two supervisors raised these and other crew member concerns with Alfrey, and told him he "needed to be more of a team player and pay more attention to the safety program." J.A. at 273.

On December 22, 2002, Alfrey was working the 3:00PM to 11:00PM shift as a truck master. One of the crew members on Alfrey's shift accidentally backed a large steel coil transport truck into a concrete support post, causing a six-inch dent in the rear of the truck, which he reported to Alfrey. AK Steel Safety Rule 27.1 requires employees to "report all injuries, illnesses, near miss accidents, and incidents to your supervisor immediately." However, Alfrey did not report the accident to his supervisor, because he did not believe the accident was serious and because the crew member who caused the collision had previously been disciplined for his involvement in a different truck accident, and Alfrey did not want him to "get in further trouble." J.A. at 261. Instead, Alfrey planned to report the accident at the beginning of his shift the next morning. However, he was unable to do so,

because when he arrived for his morning shift, department manager[1] Michael Paddock ("Paddock")

confronted him regarding the accident, which had been reported by an employee on a later shift.

On December 27, 2002, Paddock suspended Alfrey pending discharge because he had

violated a safety rule, and because "[t]here was nothing in his work history that would mitigate not

suspending him." J.A. at 384. An appeal hearing was held on January 2, at which AK Steel affirmed

the decision to discharge. Through his union representatives, Alfrey then filed a grievance under the

union's Collective Bargaining Agreement. AK Steel denied the grievance, and it was submitted to

arbitration. After a hearing, the arbitrator also denied the grievance. In his written opinion, the

arbitrator found:

> For an employee, especially one in a position of responsibility such as [Alfrey], to try
> to hide an accident to protect an[other] employee is contrary to the expectations of
> [AK Steel] in several ways. First, it violates one of the cardinal principles of the
> safety program in not reporting an incident. Second, it attempts to disguise a
> problem that a particular employee may be having with complying with the safety
> program which could, in turn . . . impact on the safety of other employees in the
> Plant. . . .
>
> The bottom line is that [Alfrey's] action in this case was an offense which
> warrants discharge as a first offense. . . . It is concluded that there was just cause for
> discharge . . . . The grievance will be denied.

J.A. at 46.

---

[1]The AK Steel hierarchy consists of various hourly workers; crew chiefs, who are also hourly workers, but supervise other hourly crew members; shift managers (salaried); section managers (salaried); department managers (salaried); and the director of operations. Alfrey, as a truck master, was a crew chief. His shift manager was Rick Smith, his section manager was Dave Malott, and his department manager was Paddock.

Defendant then filed a complaint with the district court, claiming for the first time that he had been the victim of age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 (the "ADEA"), Ohio state law, and state public policy. The district court issued a written opinion granting AK Steel's motion for summary judgment, finding that Alfrey had established a *prima facie* case of age discrimination, that AK Steel had presented a non-discriminatory reason for terminating Alfrey – namely, his intentional failure to report an accident, along with his previous safety violations – and that Alfrey had not shown that the non-discriminatory reason was pretextual. Alfrey now appeals the district court's grant of summary judgment.

## II. ANALYSIS

### A. Standard of Review

This court reviews a district court's decision to grant a motion for summary judgment *de novo*. *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 157 (6th Cir. 2004). "Summary judgment must be granted if the pleadings and evidence 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). For a "genuine issue" to exist, a reasonable jury would have to be able to find in favor of the nonmoving party on the point in dispute. *Id.* "In reviewing the district court's grant of summary judgment, this Court must view all the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.*

### B. The *McDonnell Douglas* Three-Part Test

Under the ADEA, it is "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination." *Logan v. Denny's, Inc.*, 259 F.3d 558, 566-67 (6th Cir. 2001). If the evidence of discrimination is circumstantial, the court will apply the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Logan*, 259 F.3d at 567.[2]

Under *McDonnell Douglas*, to survive summary judgment, the plaintiff must first have established a *prima facie* case of discrimination. *Id.* "The burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In the ADEA context, a *prima facie* case exists if the plaintiff shows that "(1) []he was a member of the protected class; (2) []he suffered an adverse employment action; (3) []he was qualified for the position either lost or not gained; and (4) a substantially younger person replaced" him. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1048 (6th Cir. 1998). The fourth prong can also be met if "a substantially younger person . . . was treated more favorably than" the plaintiff. *Id.* An ADEA plaintiff is a member of the protected class if he is over forty years old. 29 U.S.C. § 631(a).

---

[2]Though *Logan* deals with employment discrimination under the Civil Rights Act's Equal Employment Opportunity provisions, 42 U.S.C. §§ 2000e–2000e-17, rather than the ADEA, the *McDonnell Douglas* framework applies to ADEA cases as well. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 n.9 (6th Cir. 1990); *see also Smith v. City of Jackson*, 544 U.S. 228, 252 (2005).

Once a plaintiff has established a *prima facie* case, the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's" termination. *Logan*, 259 F.3d at 567 (quoting *McDonnell Douglas*, 411 U.S. at 802) (internal quotations omitted). If the defendant sustains this burden, under the third step of the *McDonnell Douglas* analysis, the plaintiff "must prove that the proffered reason was actually a pretext for invidious discrimination." *Id.* at 567. Because Alfrey cannot show pretext, the court need not reach the question of whether he established a *prima facie* case.[3]

## C. Pretext

AK Steel's motion for summary judgment states as its nondiscriminatory reason that Alfrey deliberately violated a safety rule, and that management also "considered Alfrey's recent history of safety violations and warnings . . . that he needed to correct his behavior." J.A. at 14. Alfrey does not dispute that AK Steel sustained its burden at this stage. Therefore, in order to establish that these reasons are pretextual, Alfrey must show "that 1) the stated reason had no basis in fact; 2) the stated reason was not the actual reason; [or] 3) that the stated reason was insufficient to explain [the employer's] action." *Id.* Alfrey argues that AK Steel's stated reasons were insufficient to explain the decision to terminate him.

---

[3]Alfrey argues on appeal that evidence sufficient to establish a *prima facie* case should by definition be sufficient to establish pretext. This is incorrect. Rather, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (emphasis added). Evidence sufficient to establish a *prima facie* case is not necessarily sufficient to establish pretext.

"The third showing . . . ordinarily[] consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Such "comparable" employees who were not fired must also have been disciplined by the same supervisor and subject to the same standards of conduct. *Johnson v. Kroger Co.*, 319 F.3d 858, 867 (6th Cir. 2003). Alfrey claims that AK Steel's stated reason for his termination is false because similarly situated employees were not fired.

However, Alfrey cannot show that any of the comparable employees he cites were disciplined by the same supervisor, subject to the same standards, and "engaged in substantially identical conduct" to Alfrey's failure to report a coil truck accident. Rather, Paddock's assertion that he has terminated every employee who failed to report an accident appears, on the basis of the pleadings and evidence, to be true. Alfrey cites Matt Dunn, Dennis Mason, Dickie Brandon, Paddock himself, Duane Rush, and Doug Jones as comparables. Dunn, Mason, Brandon, and Paddock were disciplined following decisions by supervisors other than Paddock.

Duane Rush was not subject to the same standards as Alfrey, because he held a job subordinate to Alfrey's. Moreover, neither Duane Rush nor Doug Jones engaged in the same conduct as Alfrey. Rush was involved in a coil truck accident, but there is no suggestion that he failed to report it. Jones failed to demand sufficient accountability from subordinates, according to his performance appraisals. However, the appraisals do not suggest deliberate withholding of

information. As one of his appraisals phrased it, Jones was "not as proactive as necessary." Alfrey, by contrast, was discharged for failure to report an accident, a deliberate omission.

Alfrey also attempts to establish what this court has termed "a suspicion of mendacity," claiming that AK Steel offered contradictory reasons for his termination. *See Manzer*, 29 F.3d at 1084. "[C]ontradictory statements from [a defendant's] own officers" regarding the reasons for an adverse employment action can undermine a proffered legitimate reason for termination. *White v. Burlington Northern & Santa Fe Ry. Co.*, 364 F.3d 789, 804 (6th Cir. 2004) (en banc). Alfrey claims that in his testimony during arbitration, Paddock's stated reasons for Alfrey's termination were "directly contrary" to those he claimed in his deposition testimony. J.A. at 100.

Before the arbitrator, Paddock stated:

A. I considered the seriousness of the infraction that had taken place, I considered the reasons why it wasn't reported, I considered the employee's work record, I considered his attitude, I considered his ability to do the job, I considered all of the information that I had available to me to make the decision.

. . . .

Q. Why did you decide that five days subject to discharge was appropriate in this case?
A. Well, first of all, the action by itself warrants discharge. Failure to report an accident or an incident, in my mind there is only one solution and that is to discharge the employee.

J.A. at 62-63. On the same subject during his deposition:

Q. All right. And why did you suspend Mr. Alfrey pending discharge?
A. Because he violated a safety rule.
Q. Okay. Any other reason?
A. There was nothing in his work history that would mitigate not suspending him.

J.A. at 383-84. Later in the same deposition, he stated:

> Q. Did the prior discipline that you reviewed, did that work against Mr. Alfrey, in connection did it help you to come to the conclusion to suspend him pending discharge, the fact that he had two disciplinary write-ups?
> A. No.
> Q. Did the notes from counseling work against Mr. Alfrey in connection with your decision?
> A. No.

J.A. at 390. While Paddock's explanation is somewhat difficult to follow, he is consistent in stating that while he *considered* Alfrey's record and found nothing to weigh in favor of a milder sanction, the violation of the safety rule was sufficient to justify discharge in itself.

The sort of inconsistent testimony to which the court referred in *White* was a matter of bewildering contradictions; among others, "Brown testified that Sharkey made the decision to suspend White, while Sharkey testified that Brown made the decision." *White*, 364 F.3d at 804. Paddock's testimony is not even inconsistent, and does not give rise to an inference that AK Steel's legitimate non-discriminatory reason is other than genuine.

Moreover, a "reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *Logan*, 259 F.3d at 574 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (internal quotations omitted). Because his cited comparables were not similarly situated, Alfrey's only basis on which to show that his termination was actually motivated by discrimination is that his replacement is younger than he is. This is insufficient. Alfrey cannot even show that the stated reason was false, and he certainly has not established that discrimination was the actual reason. Therefore, Alfrey cannot show that the proffered reason, his failure to report an accident along with his recent discipline problems, was

"insufficient to explain" AK Steel's decision to terminate him.  He has thus failed to meet the burden of showing pretext.

### III.  CONCLUSION

For these reasons, the grant of summary judgment was proper, and the district court's decision is **AFFIRMED**.