NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0132n.06

No. 21-5706

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOHNNIE SIMS-MADISON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| DANA COMMERCIAL VEHICLE | ) | THE WESTERN DISTRICT OF |
| MANUFACTURING, LLC, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

```
                    ┌─────────────────────┐
                    │       FILED         │
                    │    Mar 28, 2022     │
                    │ DEBORAH S. HUNT, Clerk │
                    └─────────────────────┘
```

Before: WHITE, THAPAR, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Johnnie Sims-Madison worked for fifteen years as a material handler for Dana Commercial Vehicle Manufacturing (Dana). She was disciplined multiple times for disrespectful behavior during work and was ultimately fired. Sims-Madison says that her age and race, rather than her behavior, were the real motivations for her firing, so she sued Dana for violating the Kentucky Civil Rights Act. The district court granted summary judgment to Dana. We AFFIRM.

I.

Sims-Madison, a black woman, began working as a material handler for Dana, a heavy-duty axle manufacturer, in 2003. She was a member of a local union. Sims-Madison had disciplinary issues throughout her tenure with Dana. But the events leading to her firing began in July 2017. She was suspended for one day after employees complained that she had "spoke[n]

disrespectfully" to them, allegedly hurling expletives in their direction. Sims-Madison disputed that she had uttered most of the expletives.

A little over a year later, multiple employees complained of similar misconduct by Sims-Madison. David Greenham, Dana's Human Resources Manager, met with Sims-Madison and the Union president to discuss the complaints. During the meeting, Sims-Madison told Greenham that she was going to work for the company for five more months before retiring. Although Sims-Madison again disputed some of the allegations, Dana suspended her for five days "with intent to discharge" effective September 7, 2018. The suspension letter explained that Sims-Madison had "been warned in the past about treating others in a respectful manner and yet employees are still filing formal complaints about your disrespectful behavior and the language you use and direct at them." Greenham later reduced the suspension to one day and a final warning, "[a]fter [an] investigation, listening to [her] side of the story, considering [her] 15 years seniority and the fact that [she] intend[ed] to retire in a few months." Greenham warned Sims-Madison that Dana would immediately fire her if she engaged in similar behavior again.

Over the next two months, Greenham heard more complaints about Sims-Madison. After speaking with Sims-Madison about the complaints, Dana declined to fire her. But on February 6, 2019, after two more Dana employees complained about Sims-Madison's conduct, Greenham placed Sims-Madison on suspension pending investigation of complaints about her behavior "being loud and disruptive." Sims-Madison denied the claims. According to Greenham, Sims-Madison said she would "consider retirement immediately in lieu of disciplinary action, if the Company would be willing to pay out all remaining vacation and the Union contractual lump sum increase." Sims-Madison disputes the specifics of this conversation. Regardless, on February 26, 2019, Greenham told Sims-Madison that he had an offer that "would resolve all claims and

accommodate [her] request to retire." He mailed that offer to her house, and it arrived on February 27 or 28, 2019. As of March 18, Dana had not heard from Sims-Madison, nor had the Union been able to contact her. Dana considered the "inaction and lack of communication as a rejection of the proposed agreement." And after investigating the complaints resulting in the suspension, Dana "concluded that the facts constitute[d] a violation of [the] final warning," so it terminated Sims-Madison's employment effective February 6, 2019.

Sims-Madison sued Dana and the local union in Kentucky state court, alleging age and race discrimination in violation of the Kentucky Civil Rights Act (KCRA). The defendants removed the case to federal court on the basis of diversity jurisdiction. Shortly thereafter, the district court dismissed the claims against the local union because they were preempted by, and untimely under, the Labor Management Relations Act (LMRA). Sims-Madison does not appeal that decision. The district court later granted summary judgment in Dana's favor on the grounds that Sims-Madison could not establish either a prima facie case of discrimination or that Dana's reasons for firing her were pretextual. Sims-Madison now appeals.

II.

We review the district court's summary judgment decision de novo. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018). "[S]ummary judgment is warranted only if 'there is no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a); *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).

The KCRA prohibits an employer from firing an employee because of her age or race. Ky. Rev. Stat. § 344.040(1)(a). Kentucky courts, like federal courts, apply the *McDonnell Douglas* burden-shifting framework to discrimination claims based on circumstantial evidence.

*See Norton Healthcare, Inc v. Disselkamp*, 600 S.W.3d 696, 713–23 (Ky. 2020). To establish a prima facie case of discrimination under that framework, a plaintiff must show that she (1) is a member of a protected class; (2) was qualified for the job; (3) suffered an adverse employment action; and (4) "was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *accord Charalambakis v. Asbury Univ.*, 488 S.W.3d 568, 577 (Ky. 2016). If the plaintiff can establish a prima facie case, the burden shifts to the employer "to articulate a legitimate nondiscriminatory reason for" the adverse employment decision. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011). If the employer meets this burden, "the presumption of discrimination is gone and the plaintiff must demonstrate that the employer's proffered nondiscriminatory reason was not the true reason for the employment decision, but rather a pretext for discrimination." *Id.* at 815; *accord Charalambakis*, 488 S.W.3d at 578.

We assume for the purposes of this appeal that Sims-Madison has established a prima facie case. And Sims-Madison does not challenge the district court's determination that Dana offered legitimate, nondiscriminatory reasons for terminating her employment—Sims-Madison's repeated disrespectful behavior to other employees and her violation of the final warning. So we focus exclusively on pretext. To show pretext, Sims-Madison must establish that Dana "made up its stated reason to conceal intentional discrimination." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009). She can do so by establishing that Dana's proffered reason "(1) has no basis in fact, (2) did not actually motivate [Dana's] challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Provenzano*, 663 F.3d at 815 (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)); *accord Charalambakis*, 488 S.W.3d at 578.

The district court concluded that the honest-belief rule precluded Sims-Madison from establishing pretext under the first ("no basis in fact") method of showing pretext. The honest-belief rule provides that "[a]s long as the employer held an honest belief in its proffered reason, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285–86 (6th Cir. 2012) (citation omitted). Sims-Madison does not challenge that conclusion on appeal. She therefore cannot establish pretext under this theory.

Nor can Sims-Madison show that the proffered reason did not actually motivate her termination. To establish pretext this way, Sims-Madison must "admit[] the factual basis underlying the discharge and acknowledge[] that such conduct *could* motivate the dismissal." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000). Against that backdrop, she must then establish "that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Id.* (citation omitted).

Here, the record is replete with evidence showing that Dana was concerned with Sims-Madison's treatment of other employees and that the company wished to terminate her employment. What is missing is evidence that Dana terminated her or ever wanted to terminate her because of her race or age. Sims-Madison does not point to a single racially insensitive action or use of racially insensitive language. Sims-Madison admits that no one at Dana made any comments to her about her race. And other than unsupported assertions in her deposition that Dana was a "racist" company, she offers no evidence of a racially hostile work environment. Such bare assertions are insufficient to establish discrimination. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000).

As for her age, Sims-Madison does not point to any statements indicating that Dana thought she could not do her job because of her age. Instead, she relies on inferences from comments made about her retirement. Sims-Madison first introduced the idea of her retirement to Dana when she told Greenham at her suspension meeting that she planned to retire in five months. After that, Sims-Madison says that Greenham and one other employee made comments about her retirement. She says that those comments evince Dana's true motive (age) for terminating her employment.

According to Sims-Madison, Ashley Robertson, whom she describes as a "Human Resources Generalist,"[1] approached Sims-Madison on her work anniversary and said that Sims-Madison had not given Robertson a date for retirement. Robertson stated that she wanted to make sure that Sims-Madison got her retirement paperwork. Greenham also asked Sims-Madison if she had a retirement date yet. And one time, when Greenham was hanging up something for a retirement celebration, he told Sims-Madison that "this could be yours." Sims-Madison says that Greenham and Robertson made such comments no fewer than ten times.

Generally, courts will not find pretext based on mere inquiries or comments about a potential retirement. *See, e.g.*, *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (concluding that an employer's questions about an employee's retirement plans did not demonstrate pretext because the employee could not show that anyone at the company "made direct references to his age at all," and cases in which an employer's comments about age or impending retirement indicated a discriminatory motive "involve[d] far more egregious statements"); *Diebel v. L & H Res., LLC*, 492 F. App'x 523, 532–33 (6th Cir. 2012) (concluding

---

[1] Discriminatory remarks "can only serve as pretext if 'a person in a position to influence the alleged employment decision' made them." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 896 (6th Cir. 2020) (quoting *Diebel v. L & H Res. LLC*, 492 F. App'x 523, 532–33 (6th Cir. 2012)). It is unclear from the record if Robertson had the power to influence Sims-Madison's firing, but we assume for the purposes of this appeal that she did.

that a company president's comments about wanting to create a "younger company" and his question regarding retirement did not demonstrate pretext because the employer's remarks were "isolated" and there was "little evidence that [the president] was connected to the decision not to call back [the employee]"); *Rosenthal v. Faygo Beverages, Inc.*, 701 F. App'x 472, 480 (6th Cir. 2017) (concluding that an employer's inquiry into an employee's retirement plans did not demonstrate pretext because the employee did not assert that the employer "suggested that he retire or pressured him to retire"). At some point, however, such statements go from innocuous to actionable. For example, in *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344 (6th Cir. 1998), a supervisor remarked that "this company is being run by white haired old men waiting to retire, and this has to change," and that he did "not want any employee over 50 years old on his staff." *Id.* at 355–56. And in *Hale v. ABF Freight System, Inc.*, 503 F. App'x 323 (6th Cir. 2012), a supervisor said that "she would 'see to it' that [the plaintiff] left [the company] by age 62 and go on his social security." *Id.* at 335. We noted in *Ercegovich* that the statements "on their face strongly suggest[ed] that the speaker harbors a bias against older workers." 154 F.3d at 355; *see also Hale*, 503 F. App'x at 335 (remarks were "strong circumstantial evidence"). The remarks here do not rise to that level. Moreover, a discrimination claim based on an employer's remarks is stronger when the remarks are accompanied by other evidence of pretext. *See, e.g.*, *Ercegovich*, 154 F.3d at 356; *Hale*, 503 F. App'x at 335; *see also Wells v. New Cherokee Corp.*, 58 F.3d 233, 237 (6th Cir. 1995) (age-related comments were "buttressed by" other evidence of pretext). Sims-Madison has produced none.

Here, Sims-Madison has not shown that her age was Dana's actual motivation for the termination. There is no dispute that Dana wanted Sims-Madison gone. Greenham made that clear in emails uncovered during discovery. He wanted to fire her after the incident that instead

resulted in a final warning. He even asked, "Can we suggest she retire or is that constructive discharge?" And his intentions were clear: "I want [Sims-Madison's behavior] to stop or I want [her final warning] so tight that the next reported and signed complaint will be termination." But none of that suggests that Greenham's motivation was Sims-Madison's age, rather than her conduct; and nothing else in the record suggests an age-based motive either. Instead, the record reveals one consistent motivation—her behavior and treatment of others, which Sims-Madison's fellow employees and the company regarded as disrespectful.

As for the third method of showing pretext, Sims-Madison must establish that Dana's reasons for firing her were insufficient to motivate the discharge. *Provenzano*, 663 F.3d at 815. To make this showing, Sims-Madison must offer "evidence that other employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct." *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012); *accord Hughes v. Norton Healthcare, Inc.*, No. 2019-CA-0222-MR, 2020 WL 7295190, at *12 (Ky. Ct. App. Dec. 11, 2020).

Sims-Madison offers seven alleged comparators who she says "engaged in the same or worse conduct" but were not fired. Appellant Br. at 24. The district court, however, noticed several apt distinctions between Sims-Madison and her alleged comparators. Most importantly, her alleged comparators were involved in isolated incidents. The only exception was Carla Piper. Piper (who is white and much younger than Sims-Madison) had a similar history of increasing levels of discipline. And, like Sims-Madison, Dana fired Piper when she violated her final warning. So Sims-Madison has failed to offer employees outside the protected class who "engaged in substantially identical conduct" but were not disciplined.

Sims-Madison counters that she should not have been on final warning because the CBA required employee records to be wiped clean after twelve months.[2] But "an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 896 (6th Cir. 2020) (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 246 (6th Cir. 2005)). And Sims-Madison marshalled no evidence—such as disparate application of the one-year look back policy— suggesting that Dana's reason for failing to follow the CBA was her race or age. *See id.* ("Miles has shown no employee, let alone one outside the protected class, against whom [the employer's] policy was applied differently."); *Gunn v. Senior Servs. of N. Ky.*, 632 F. App'x 839, 846–47 (6th Cir. 2015) ("An employer's failure to follow internal disciplinary protocols is most probative when coupled with evidence that the employer followed the protocols for people outside of plaintiff's protected class."). Similar reasoning dispatches Sims-Madison's complaints about Dana's failure to adhere strictly to the CBA's timeframe for imposing discipline. Sims-Madison does claim that she "was the only employee to ever be given a final warning with a mere one (1) day suspension, despite the policy requiring a minimum of five (5) day suspension." Appellant Br. at 22. But even this contention does not suggest that Dana applied its policy along race- or age-based lines. What's more, Sims-Madison fails to wrestle with the facts: Dana reduced Sims-Madison's five-day suspension with "intent to terminate" to a one-day suspension with a final warning. We struggle to see how this decision in her favor warrants an inference of discrimination.

---

[2] On appeal, Dana argues that Sims-Madison may not build her state-law KCRA claim by pointing to Dana's alleged violation of the collective bargaining agreement. To do so, Dana says, would require the court to interpret the CBA, thus rendering her claims preempted under § 301 of the LMRA. *See Paul v. Kaiser Found. Health Plan of Ohio*, 701 F.3d 514, 519 (6th Cir 2012). But Dana did not present this argument to the district court below, nor does the company explain why we should consider the argument for the first time on appeal. So we decline to consider Dana's preemption argument. *See Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1215 (6th Cir. 1987).

Finally, Sims-Madison asks us to look at all the evidence together, rather than through the lens of each individual method of showing pretext. *See Chen*, 580 F.3d at 400 n.4 (cautioning courts "to avoid formalism in [the] application" of the three-part test). She reminds us that "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Id.* Here, it was Sims-Madison's burden to produce sufficient evidence from which a jury could answer that question in the negative. She has not met that burden. Dana wanted Sims-Madison gone; there is no doubt about that. But Sims-Madison has not produced sufficient evidence showing that her repeated disrespectful behavior to other employees was not the motivator; instead, her age or her race was. Sims-Madison has not established pretext, so her discrimination claims fail. *Id.*

\* \* \*

We AFFIRM.